JUDGE SCHEINDLIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



NATURAL RESOURCES MEDIA
& TECHNOLOGY GROUP, LLC,

                              Plaintiff,

        -against-

SNOOP YOUTH FOOTBALL LEAGUE
FOUNDATION, THE FIRM, INC., d/b/a "THE
FIRM," and CONSTANCE SHWARTZ,

                              Defendants.

NOTICE OF REMOVAL OF ACTION
PURSUANT TO 28 U.S.C. § 1441

NEW YORK
COUNTY CLERK'S OFFICE

AUG 29 2007

NOT COMPARED
WITH COPY FILE

AUG 29 2007
U.S.D.C. S.D.N.Y.
CASHIERS

TO THE HONORABLE JUDGES OF UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

PLEASE TAKE NOTICE that defendants The Firm, Inc. ("The Firm") and Constance

Schwartz ("Schwartz") (collectively, "The Removing Defendants") hereby file this Notice of

Removal pursuant to 28 U.S.C. §§ 1441 and 1446 to remove this action from the Supreme Court

of New York, County of New York, to this Court.

1.      On December 29, 2006, plaintiff Natural Resources Media & Technology Group,

LLC ("Plaintiff") commenced this action in the Supreme Court of New York, County of New

York, as Index No. 604453/06 (the "State Court Action"). A Supplemented Complaint was

filed by Plaintiff on or about June 28, 2007 (the "Supplemented Complaint"). True and correct

copies of the Supplemented Complaint and Supplemented Summons are attached hereto as

Exhibit "A" and are incorporated herein by this reference.

2.      The Removing Defendants were not parties to Plaintiff's original Complaint, but

were added as parties to the Supplemented Complaint.

3.      The Supplemented Complaint was served on The Removing Defendants on July

31, 2007. The Removing Defendants have not yet responded to the Supplemented Complaint in

the State Court Action, and their time to respond to the Supplemented Complaint has not yet expired.

      4.     Removal of the State Court action is based on diversity of citizenship. According to the Supplemented Complaint, Plaintiff was incorporated in the State of New York and has its principal place of business in the County of New York. None of the Defendants, however, is a resident of New York.

      a.     Defendant Snoop Youth Football League Foundation ("SYFL") is a California corporation with its principal place of business at 2049 Century Park East, Suite 3200, Los Angeles, California 90067.

      b.     The Firm is a California corporation with its principal place of business at 9465 Wilshire Blvd., 6th Floor, Beverly Hills, California 90212.

      c.     Schwartz is a resident of California and resides at 18 Union Jack Street #301, Marina Del Rey, California 90292.

      5.     The Supplemented Complaint seeks an award in excess of $750,000.

      6.     In light of the foregoing, this Court has original jurisdiction over all claims pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000, exclusive of interest and costs.

      7.     Defendant SYFL has consented to the Removing Defendants' Notice of Removal. A true and correct copy of SYFL's Notice of Consent to Removal is attached hereto as Exhibit "B" and is incorporated herein by this reference.

      8.     This Court is the proper venue to which this case may be removed because the Southern District of New York is the judicial district in which the action is currently pending. 28 U.S.C. § 1441(a).

Doc. # CC-164669 v.1

9.      Removal of this case on the basis of diversity of citizenship is not precluded by the provisions of 28 U.S.C. § 1441(b) because none of the parties in interest properly joined and served as Defendants are citizens of the State of New York, the State in which this action was brought.

10.     This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it has been filed within 30 days after the Defendants first received notice of the suit through service of process and could ascertain that it was removable.

11.     Upon filing of this Notice of Removal, the Removing Defendants provided a copy to all parties of record and filed a copy with the Clerk of the Supreme Court of New York, County of New York.

Dated: New York, New York
        August 29, 2007

STEPTOE & JOHNSON LLP

By: _____
        Michael C. Miller (MM 4632)
        Evan Glassman (EG 9493)
        Christopher J. Marino (CM 3219)
        750 West 7th Avenue
        Suite 1900
        New York, NY 10019
        (212) 506-3900

        *Attorneys for Defendants*
        *The Firm, Inc. d/b/a "The Firm" and*
        *Constance Schwartz*

*Of Counsel:*
Michael R. Heimbold
Dylan Ruga
STEPTOE & JOHNSON LLP
2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067
(310) 734-3200

Doc. # CC-164669 v.1

## CERTIFICATE OF SERVICE

I do hereby certify that on this 29th day of August, 2007, I served a copy of the foregoing

**Notice of Removal** on Bradley C. Rosen, Esq., counsel for Plaintiff in the above-captioned

matter via electronic mail and Federal Express.

Kimberlyn Brzozowski

Doc. # CC-164669 v.1

**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

NATURAL RESOURCES MEDIA
& TECHNOLOGY GROUP. LLC,

                    Plaintiff,

           -against-

SNOOP YOUTH FOOTBALL LEAGUE FOUNDATION,
THE FIRM, INC., d/b/a "The Firm," and
CONSTANCE SCHWARTZ

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**SUPPLEMENTED SUMMONS**

INDEX NO.: 604453/06

DATE PURCHASED:
December 29, 2006

TO THE ABOVE-NAMED DEFENDANTS:

You are hereby summoned and required to serve upon plaintiff's attorney an answer to the complaint in this action within twenty days after the service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint. The basis of the venue designated is plaintiff's place of business, which is in the State of New York, County of New York.

Dated: June 28, 2007
       Rochester, NY

                                Bradley C. Rosen, Esq.
                                Attorney for Plaintiff
                                159 Seneca Parkway
                                Rochester, NY 14613
                                (585) 458-7620

Defendants' places of business:

| Snoop Youth Football League Foundation<br>15260 Ventura Blvd., Suite 2100<br>Sherman Oaks, CA 91403 | The Firm, Inc., d/b/a "The Firm<br>9465 Wilshire Blvd., 6th Flr.<br>Beverly Hills, 90212 | Constance Schwartz<br>9465 Wilshire Blvd., 6th Flr.<br>Beverly Hills, 90212 |
| --- | --- | --- |

NEW YORK
COUNTY CLERK'S OFFICE

JUL 10 2007

NOT COMPARED
WITH COPY FILED

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
NATURAL RESOURCES MEDIA
& TECHNOLOGY GROUP, LLC,

                 Plaintiff,                    **SUPPLEMENTED COMPLAINT**

           -against-                 **INDEX NO.: 604453/06**

SNOOP YOUTH FOOTBALL LEAGUE FOUNDATION,
THE FIRM, INC., d/b/a "The Firm," and
CONSTANCE SCHWARTZ

                 Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

       Plaintiff Natural Resources Media & Technology Group, LLC., by and through its

attorney, Bradley C. Rosen, Esq., complaining of the defendants, alleges as follows:

PARTIES

       1.     Plaintiff Natural Resources Media & Technology Group, LLC. ("plaintiff" or

"Natural Resources"), is a domestic corporation, duly authorized to conduct business under the

laws of the State of New York.  Plaintiff maintains offices for the purpose of conducting

business within the County of New York.

       2.     Defendant Snoop Youth Football League Foundation ("SYFL") is, upon

information and belief, a foreign corporation duly authorized to conduct business under the laws

of the State of California.  Upon further information and belief, defendant is the owner and

operator of a youth football program.

       3.     Defendant The Firm, Inc., d/b/a "The Firm" ("The Firm") is, upon information

and belief, a foreign corporation duly authorized to conduct business under the laws of the State

of California.

4.    Upon information and belief, The Firm is, among other things, in the business of providing management services for individual performers, artists, athletes and other like individuals.

5.    Upon information and belief, one of the individuals to whom The Firm provided its managerial services is, or at all times relevant hereto was, Cordozar Calvin Broadus, Jr. a/k/a "Snoop Dogg" ("Snoop.")

6.    Defendant Constance Schwartz ("Schwartz") is, upon information and belief, an individual who resides in the State of California.

7.    Upon information and belief, Schwartz was, at all times relevant hereto, employed as a manager by The Firm.  Upon further information and belief, Snoop is, or at all times relevant hereto was, one of the artist's for whom Schwartz provides managerial services on behalf of The Firm.

8.    Upon further information and belief, Schwartz was, at all times relevant hereto, a member of the SYFL's Board of Directors and/or was otherwise responsible for and/or involved with the operation of the SYFL.

FACTS COMMON TO ALL ACTIONS

9.    On or about June 26, 2006, plaintiff and the SYFL entered into a contract (the "Contract") wherein and whereby it was agreed, among other things, that plaintiff would have the sole and exclusive right to record certain activities of the SYFL, including, but not limited to: (a) SYFL's regular season football games; (b) SYFL's 2006 championship game, a/k/a "The Snooperbowl;" and (c) SYFL's celebrity football game a/k/a "The Snoop Youth Football League Battle of the Stars" (collectively hereinafter referred to as the "Events.")  A copy of the Contract is annexed hereto as Exhibit 1.

10.    The Contract further stipulated that plaintiff would have the sole and exclusive right to broadcast, manufacture, distribute or otherwise exploit the recordings of the Events.

11.    Defendant SYFL warranted in the Contract that it was the owner of the rights that it was licensing to plaintiff, and that it was authorized to so license the rights.

12.    Based upon the Contract, plaintiff began the recording and exploitation of the Events by, among other things, entering into an agreement with a production company for the recording of the Event.  Plaintiff further entered into an agreement with a broadcaster for the televising of the Events.  Pursuant to these agreements, plaintiff began the recording of the Events.

13.    Upon information and belief, at some time prior to the execution of the Contract, non-party Twentieth Century Fox, a unit of Twentieth Century Fox Film Corporation ("Fox") entered into an agreement with Snoop to create a television series entitled "Coach Snoop."  Upon further information and belief, "Coach Snoop" was intended to focus on Snoop and/or his children in a youth football program.

14.    Upon information and belief, Fox's contract regarding "Coach Snoop" was with Snoop individually, and Fox never entered into an agreement with the SYFL for the recording, broadcasting or other use of the Events.

15.    Upon information and belief, on or about October 12, 2006, Schwartz and/or The Firm contacted Fox and informed Fox that plaintiff was recording the Events, and further that plaintiff did not have the right or authority to record the Events.

16.    On or about October 13, 2006, Fox sent a letter to the SYFL, plaintiff and the production and broadcasting companies hired by plaintiff to record and broadcast the Events (the "October 13 Letter.")  (A copy of the October 13 Letter is annexed hereto as Exhibit 2)

17.    In the October 13 Letter, Fox claimed that the Contract, and the activities undertaken by plaintiff pursuant thereto, violated rights held exclusively by Fox. Fox demanded, among other things, that plaintiff and the production and broadcasting companies hired by plaintiff to record and broadcast the Events immediately cease the recording of the Events.

18.    Based upon Fox's demand, the parties with whom plaintiff had contracted for the recording and broadcasting of the Event withdrew from their agreements and ceased recording the Events.

### OF AND FOR A FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### ASSERTED AGAINST DEFENDANT SYFL

19.    Plaintiff restates and realleges the statements set forth in paragraphs 1 through 18, inclusive, as if fully set forth herein.

20.    As part of the Contract, the SYFL agreed to indemnify and hold plaintiff harmless from all "damages, losses, costs and expenses (including, without limitation, attorney's fees and disbursements) arising out of or relating to any breach or alleged breach by SYFL of any representation, warranty, covenant or agreement made by SYFL hereunder . . . ." (Ex. 1 at ¶ 14)

21.    On or about October 20, 2006, plaintiff notified the SYFL that it was in breach of the Contract by, among other things, failing to have the rights it licensed to plaintiff and/or failing to have the authority to license said rights.

22.    Plaintiff further demanded that, in accordance with the Contract, the SYFL either assist plaintiff in resolving the rights issue raised by Fox or indemnify plaintiff from the losses it would incurred should the issue not be resolved.

23.    The SYFL has failed to cure the breach.

24.     Plaintiff has fully performed each and every obligation to be performed by it under the Contract.

25.     The SYFL has breached the Contract by, among other things: (a) failing to assist plaintiff in resolving the rights issue asserted by Fox; (b) failing to have ownership to the rights licensed by the SYFL to plaintiff; (c) failing to have the authority to license the rights to plaintiff; and/or (d) failing to indemnify plaintiff from the losses plaintiff incurred by the SYFL's breach, including, but not limited to, attorney's fees and disbursements.

26.     By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial, but in no event less than $250,000.

OF AND FOR A SECOND CAUSE OF ACTION
TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
ASSERTED AGAINST DEFENDANTS THE FIRM AND SCHWARTZ

27.     Plaintiff restates and realleges the statements set forth in paragraphs 1 through 26, inclusive, as if fully set forth herein.

28.     Upon information and belief, defendants The Firm and Schwartz knew or should have known of: (a) the existence of the Contract between plaintiff and the SYFL; (b) the scope and nature of the rights granted by the SYFL to plaintiff by the Contract; and/or (c), the existence of the agreements entered into between plaintiff and the production and broadcasting companies hired by plaintiff to record and broadcast the Events.  This belief is based upon: (i) the believed fact that The Firm and/or Schwartz are, or were at all times relevant hereto, Snoop's manager; and/or (b) the believed fact that Schwartz was, at all times relevant hereto, a member of SYFL's Board of Directors and/or was otherwise responsible for and/or involved with the operation of the SYFL.

29.    Upon information and belief, when Schwartz and/or The Firm told Fox that plaintiff had no right to record or otherwise utilize the Events, they knew or should have known that the statements were false.

30.    Upon information and belief, when The Firm and/or Schwartz made the false statements to Fox as set forth above, they did so with the intent of causing Fox to issue the October 13 Letter, or other like similar statement from Fox, to plaintiff and all parties doing business with plaintiff in connection with the Events.

31.    Upon information and belief, Schwartz and/or The Firm knew, or should have known, that the issuance of the October 13 Letter by Fox, or other like similar statement, would cause all parties doing business with plaintiff in connection with the Events to cease the rendition of their services.

32.    Because of the October 13 Letter, which was issued, upon information and belief, because of the dissemination by The Firm and/or Schwartz of information they knew, or should have known, was false, the parties who had agreed to record and broadcast the Events on behalf of plaintiff terminate their agreements, and the Events were not recorded.

33.    The actions of defendants The Firm and/or Schwartz as described above were wrongful, and defendants The Firm and/or Schwartz knew them to be wrongful, or should have known them to be wrongful, when they were undertaken.

34.    Because of the wrongful conduct of defendants The Firm and/or Schwartz, plaintiff has been damaged in an amount to be determined at trial, but in no event less than $250,000.

OF AND FOR A THIRD CAUSE OF ACTION
FOR DEFAMATION
ASSERTED AGAINST DEFENDANTS THE FIRM AND SCHWARTZ

35.    Plaintiff restates and realleges the statements set forth in paragraphs 1 through 34, inclusive, as if fully set forth herein.

36.    Upon information and belief, on or about October 12, 2006, defendants The Firm and/or Schwartz made certain statements to Fox of and concerning plaintiff.

37.    While the exact wording of the statements made by defendants The Firm and/or Schwartz is presently unknown, upon information and belief, the sum and substance of the statements made was that plaintiff was recording and/or otherwise utilizing the Events without authorization.

38.    Upon information and belief, defendants The Firm and/or Schwartz knew, or should have known, that the statements that they made to Fox on or about October 12, 2006 were false.

39.    Plaintiff was damaged by the false statements made by defendants The Firm and/or Schwartz.

40.    By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial, but in no event less than $250,000.

WHEREFORE, based upon the foregoing, plaintiff respectfully requests that judgment be entered against the defendants as follows:

a.    On the First Cause of Action, against defendant the SYFL, for breach of contract, compensatory damages in an amount to be determined at trial, including plaintiff's attorney's fees, but in no even less than $250,000, together with interest thereon from October 13, 2006;

b.    On the Second Cause of Action, against defendants The Firm and Schwartz,

compensatory damages in an amount to be determined at trial, but in no even less than $250,000;

     c.    On the Third Cause of Action, against defendants The Firm and Schwartz, compensatory damages in an amount to be determined at trial, but in no even less than $250,000;

     e.    Awarding to plaintiff the costs and disbursements of this action, including, but not limited to, reasonable attorney's fees; and

     f.    Awarding to plaintiff any other, further and different relief that to the Court seems just, proper and equitable.

Dated: June 28, 2007
       Rochester, NY

Bradley C. Rosen, Esq.
Attorney for Plaintiff
159 Seneca Parkway
Rochester, NY 14613
(585) 458-7620

**Exhibit 1**

**COREY SIMMONS D/B/A NATURAL RESOURCES MEDIA TECH GROUP**
c/o Kaplan & Gamble, LLP
432 Park Avenue South
Second Floor
New York, New York 10016

June 26, 2006

VIA E-MAIL
Snoop Youth Football League
c/o Axcess Sports & Entertainment
One Independent Drive, Ste. 2602
Jacksonville, FL 32202
Attn: Brodie Waters

RE:     Snoop Youth Football League Foundation / Video Proposal

Dear Gentlemen:

This letter when signed by all parties below, shall confirm the material terms of the agreement (the "Agreement") between Cory Simmons d/b/a Natural Resources Media Tech Group ("Natural Resources") and Snoop Youth Football League ("SYFL") as it relates to each parties' involvement in the exploitation of the 2006 Snooperbowl & the Snoop Youth Football League season games and the Snoop Youth Football League Battle Of The Stars (individually and collectively, the "Program"), currently scheduled to take place at _____, featuring certain recording artists, the selection of which shall be determined sometime in the near future. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, we have agreed as follows:

1.     **Program.**

Natural Resources shall have the exclusive pay-per-view, Pay Cable, Free Cable, Home Video and any other exploitation rights, now known or hereinafter invented, with respect to the video footage as it relates to the Program ("Video Footage").

2.     **Financing/Budget.**

(a)     The projected production budget for the Video Footage shall be $100,000.00 (or such other amount as may be mutually determined by Natural Resources and SYFL ) (the "Budget"). In addition to the foregoing, Natural Resources and SYFL shall create a mutually approved marketing plan and budget in connection with the Program and the Video Footage; which such approval shall not be unreasonably withheld.

(b)     Natural Resources will raise or provide funds for the production and recording of the Video Footage (including, the Budget). As between Natural Resources and SYFL, SYFL shall be solely responsible for all costs associated with the producing of the live event portion of the Program (i.e. all costs associated with equipment and travel for players, referees, guardians, coaches, security, securing of usage of a venue, insurance, etc., relating to the Program). For purposes of clarification, SYFL shall not be responsible for any costs which are solely related to the Video Footage.

3.     **Principal Parties.**

Natural Resources and SYFL shall be the principal parties to enter into an agreement as it relates to the rights and responsibilities hereunder. For purposes of clarification, it is currently contemplated that (a) Natural Resources shall be responsible for providing the financing and video production for the Video Footage and (b) SYFL shall be responsible for producing the live Program.

SnoopFootballLeagueVIDEOEXECUTION                    1

4.    **Sponsorship.**

(a)    Natural Resources shall have the right to raise sponsorship funds from third-parties in connection with the Video Footage, subject to approval of SYFL, not to be unreasonably withheld.

(b)    All sponsorship dollars for the Video Footagte which are raised by either Natural Resources, Axcess Sports or SYFL shall be split as follows:  thirty percent (30%) for Natural Resources, twenty percent (20%) for Axcess Sports and Entertainment and fifty percent (50%) for SYFL , after recoupment of the Budget.

(c)    All sponsorship dollars for the Program that are not related to,the Video Footage, but rather are solely applicable to the live event portion of the Program, shall be split between SYFL and Axcess Sports only, Natural Resources shall have no entitlement to same.

5.    **DVD Sales.**

(a)    Natural Resources  shall be responsible for obtaining all third-party clearance rights in connection with the exploitation of the Video Footage; provided, however, SYFL shall offer its reasonable assistance in obtaining such clearances in furtherance of this understanding.

(b)    SYFL shall be entitled to receive an amount equal to fifty percent (50%) of the "net proceeds" actually received by Natural Resources in connection with the Video Footage, payable on a pari passu basis with all other profit participants of the Video Footage. It is hereby agreed that all third-party profit participations shall be deducted prior to the allocation of any net proceeds to the principal parties hereunder.

6.    **Recoupment/Distributions.**  For purposes of this agreement, "net proceeds" shall be defined as follows:  All revenues and gross receipts received by Natural Resources in connection with the exploitation of the Video Footage, including monies received from the distribution or exploitation of the Video Footage shall be distributed in the following order of priority:

First,  to recoup and repay the production and financing costs of the Video Footage;

Next, if any, to the payment of any deferrals granted for the production of the Video Footage;

Next, if any, to third party profit participations granted for the production of the Video Footage;

Next, thirty percent (30%) to Natural Resources, twenty percent (20%) to Axcess Sports and Entertainment and fifty percent (50%) to SYFL.

7.    **Accounting/Audits.**  All monies accrued hereunder shall be paid to and collected by an accountant, accounting firm or business manager (the "Accountant") mutually selected by Natural Resources and SYFL.  The Accountant shall render to SYFL periodic statements showing, in summary form, all transactions directly relating to SYFL's profit participation hereunder.  Such statements shall be rendered quarterly during the twenty-four (24) month period following the initial release of the Program, semi-annually during the next thirty-six (36) months and annually thereafter; provided, however, that no statement need be rendered for any period in which no receipts are received or charges incurred.

The Accountant will keep and maintain at its principal place of business true and accurate records of all transactions directly relating to SYFL's profit participation hereunder, which books and records, together with supporting vouchers and/or other documentation, shall be open for inspection by SYFL or its authorized representative twice with respect to each one (1) year period during regular business hours and upon reasonable prior written notice.  Any such audit shall be conducted only by a reputable public accountant (subject to Natural Resources' reasonable approval) and shall not continue for more than thirty (30) consecutive days.  The costs of any

such inspection shall be the sole responsibility of SYFL. SYFL shall not have the right to examine or inquire into any matters or items which are embraced by or contained in any such accounting statements after the expiration of twenty four (24) months from and after the date of mailing of such statement, and such statement shall be final and conclusive upon the expiration of such twenty-four (24) month period, notwithstanding that matters embraced by or contained therein may later be contained or referred to in a cumulative statement pertaining to more than one accounting period. Such cumulative statement shall not be subject to audit by SYFL to the extent the material contained therein was first reflected on a statement submitted more than twenty-four (24) months prior to the date of mailing of such cumulative statement. SYFL shall be forever barred from maintaining or instituting any action or proceeding based upon, or in anyway relating to, any transactions had by Natural Resources, or its licensees, in connection with the Music Program which are embraced by or reflected on any statement rendered hereunder, or the accuracy of any items appearing therein, unless written objection thereto shall have been delivered by SYFL to Natural Resources within twenty four (24) months after the date of mailing of the statement on which such transaction or item was first reflected and unless such action or proceeding is commenced within six (6) months after delivery of such written objection.

8. **Controls.**

Subject to the terms herein, Natural Resources shall have joint business control along with SYFL over all aspects of the Video Footage. Natural Resources and SYFL shall have mutual approval over all creative aspects of the Video Footage; SYFLs approval not to be unreasonably withheld.

9. **Ownership Rights.**

SYFL and Natural Resources shall be the joint copyright holders of the Video Footage. Notwithstanding anything to the contrary contained herein or any rights SYFL may have arising at any time under any copyright or other applicable law of any jurisdiction, SYFL acknowledge and agree as follows:

(a)     As between Natural Resources, on the one hand, and SYFL on the other hand, Natural Resources shall have the sole and exclusive administration rights with respect to the copyright in the Video Footage.

(b)     SYFL will execute and deliver to Natural Resources such documents as Natural Resources may from time to time deem necessary or desirable to confirm, implement and enforce all right, title and interest in and to the Video Footage and all rights of Natural Resources under this Agreement, including, without limitation: (A) any memoranda of this Agreement which Natural Resources may elect to file or record in any governmental or administrative offices anywhere in the world, including, without limitation, with the United States Copyright Office; and (B) any documents which the laws of any foreign jurisdiction may require to be executed by all authors of a particular work in order to effectuate a particular transfer or license.

(d)     In the event SYFL licenses, transfers, sells or assigns the copyright in the Video Footage to any party, for any purpose now known or hereinafter invented, any and all remunerations resulting from same shall be distributed, thirty percent (30%) to Natural Resources , twenty percent (20%) percent to Axcess Sports, and the balance of fifty (50%) percent payable to SYFL.

10. **Subsequent Productions.**

Provided that Natural Resources is not in material breach of any of the material terms hereunder, and that SYFL has provided Natural Resources with all of the materials, documentation, Letters of Intent, etc., necessary in order to secure distribution for the Video Footage, Natural Resources, with the assistance of SYFL, shall have until December 31, 2006, to secure distribution for the Video Footage. In the event that on December 31, 2006, Natural Resources is in substantial negotiations regarding the distribution of the Video Footage, Natural Resources shall automatically be granted an additional thirty (30) days within which to finish said negotiations. In the event that such distribution is secured, Natural Resources shall have the exclusive right to produce additional Snooperbowl and Battle of the Stars events, for the years 2006 and 2007, (the "Subsequent Productions") upon

SnoopFootballLeagueVIDEOEXECUTION                    3

financial terms no less favorable than those accorded herein.  Moreover, in the event that distribution is secured for the Video Footage via one of the major networks (i.e. ABC, NBC, CBS or Fox), a Viacom Company, a Disney Company, or a branch derivative of any of the aforementioned, then Natural Resources shall have an option to produce the Video Footage for the year 2008.  In the event that distribution is not secured as referenced above, then SYFL shall have the right to work with pursue avenues of exploitation for Subsequent Productions of the Video Footage without Natural Resources involvement in same.

11.     Credits. Provided the parties have complied with their respective material obligations hereunder, each shall receive the credit set forth below:

(a)     Presentation/Company credits: "Natural Resources Media Tech Group"
(b)     "Produced by Robin Strickland              "
(c)     "Executive Producer" credits (including, but not limited to, Executive Producer credit to Corey Simmons & Snoop Dogg)
(d)     Co-Executive Producer credits, which shall be determined in good faith between Natural Resources and SYFL.

12.     Representations & Warranties. Each party hereby warrants and represents to the other that it has the right and capacity to enter into this Agreement.

13.     Assignment.  No party hereto may assign this Agreement nor grant its rights hereunder, in whole or in part, to any person, firm or corporation without the written consent of the other parties, which consent shall not be unreasonably withheld.

14.     Indemnification.  SYFL shall defend, indemnify and hold harmless Natural Resources, its successors, licensees, assigns and parent, subsidiary and affiliated companies, and the directors, officers, shareholders, agents, representatives, successors, licensees and assigns of each of the foregoing, from and against all claims, liabilities, damages, losses, costs and expenses (including, without limitation, attorneys' fees and disbursements) arising out of or relating to any breach or alleged breach by SYFL of any representation, warranty, covenant or agreement made by SYFL hereunder or from the promotion, distribution and exploitation by Natural Resources of the Video Footage or any rights therein. Except to the extent that a claim arises out of a breach of SYFL's representations, warranties or obligations herein, Natural Resources agrees to indemnify SYFL, its successors, heirs, assigns, administrators, trustees, executors and personal representatives, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including, but not limited to, reasonable outside attorneys' fees and court costs), judgments and penalties arising out of Natural Resources' breach of any warranties, representations or obligations herein and the development, production, distribution, promotion, marketing, advertising, and all other exploitation of the Video Footage.

15.     E&O Insurance.  Natural Resources shall add SYFL as an additional insured under Natural Resources' errors and omissions policy in connection with the Program if any, subject to the terms and conditions of said policy, including any deductible or policy limits; provided, however, the inclusion of SYFL on such policy will not relieve SYFL from SYFL's representations, warranties and indemnities contained herein and no such policy will cover any claims or demands to which SYFL's indemnification of Natural Resources applies.

16.     Disclaimer.  In the event that the through no fault of SYFL itself, the Program, or any part thereof, does not in fact take place during any of the years 2006, 2007 and/or 2008, Natural Resources shall have no claim against SYFL as a result of such non-occurrence.

17.     More Formal Agreement(s).

It is presently contemplated that we will, at some time in the future, enter into a more formal agreement with respect to your services on the Program, which will contain all of the above terms and any other provisions customarily included in such agreements.  Pending execution of such more formal agreement(s), this

SnoopFootballLeagueVIDEOEXECUTION                    4

Agreement shall be the entire agreement concerning its subject matter and cannot be amended, modified or changed except by a written document signed by Natural Resources and the applicable party.

      If this document accurately reflects your understanding as it relates to you, please sign the enclosed duplicate original where indicated below and return it to me at your earliest convenience.

Sincerely yours,

*Corey Simmons*

Corey Simmons
for Natural Resources Tech Media Group

AGREED TO AND ACCEPTED:

By: *Michael Huyghe*

    Michael Huyghue,
    An authorized signatory of Snoop
    Youth Football League

SnoopFootballLeagueVIDEOEXECUTION          5

Exhibit 2

LEGAL PRODUCTION     Fax:3103698505        Oct 13 2006  19:24     P.01



**TWENTIETH CENTURY FOX**
A UNIT OF TWENTIETH CENTURY FOX FILM CORPORATION

P.O. Box 900
Beverly Hills, California 90213-0900
Phone 310 369 2265 • Fax 310 369 8505

Michael D. Ross
Senior Vice President
Legal Affairs

October 13, 2006

**VIA OVERNIGHT COURIER AND FACSIMILE**

TV One
c/o Karen Wishart, Esq.
Executive Vice President
 and Chief Legal Officer
1010 Wayne Avenue
Silver Spring, Maryland  20910

FACSIMILE: (301) 755-2913



Strange Fruit Film and TV
Natural Resources Media Tech Group LLC
c/o Darrell D. Miller, Esq.
Miller & Pliakas, LLP
9720 Wilshire Boulevard, Suite 700
Beverly Hills, California 90212

FACSIMILE: (310) 860-1515

Axcess Sports & Entertainment LLC
c/o Michael Huyghue
Chief Executive Officer
One Independent Drive, Suite 2602
Jacksonville, Florida  32202

FACSIMILE: (904) 301-3001

Re:     "COACH SNOOP"/TV One Television Project

Dear Ms. Wishart, Mr. Miller and Mr. Huyghue:

It has come to our attention that TV One, Strange Fruit Film and TV, Natural Resources Media Tech Group LLC and Axcess Sports & Entertainment LLC have been developing a reality television series about the Snoop Youth Football League and Snoop's involvement with youth football. As you know, any such series involving Snoop would violate and interfere with Fox's exclusive agreement with him. As Snoop's representatives have already informed you, Snoop granted Fox exclusive rights to portray Snoop in any motion picture or television project or other production based on Snoop's involvement with his sons' football teams and leagues.  Included in the grant of rights is the exclusive right to use Snoop's name, voice, likeness, appearance and personal experiences in connection with such a project. Fox also has exclusive rights to all materials written by Snoop that relate to his involvement in youth football and in the League.

We understand that TV One had already commenced production, which you have now shut down after you were informed that Snoop has not, and cannot, grant you the rights necessary to proceed with it. To the extent production has not shut down, we demand that you immediately cease and desist. Fox already has made a huge investment in our project and if you continue to move forward with your television project in violation of Fox's rights, it will severely impact the viability of our theatrical motion picture. At a minimum, you are looking at a lawsuit for damages in the amount of all of our development costs, and other expenditures attributed to our project. Alternatively or in addition, if you continue with your plans, you likely will face an action for injunctive relief to protect Fox's property rights, and to prevent you from violating other exclusive rights granted to Fox by Snoop. Finally, having been informed of Fox's contract with Snoop, any interference by you with that agreement and with our contractual relationship with Snoop will expose you to an action for punitive damages.

LGL\603921 v4 MDR  10-12-06
"COACH SNOOP"/TV One

A NEWS CORPORATION COMPANY

TV One
October 13, 2006
Page 2


We trust that your ceasing production on the series reflects a commitment on your part to respect Fox's
contractual relationship with Snoop and the rights granted by him.   Your proceeding with this project in
violation of those rights would derail that relationship and force Fox to incur a total loss of its sizeable
investment to date in the motion picture.  In sum, any series produced by you that uses rights granted
exclusively to Fox, will expose you to liability for all of Fox's resulting damages, in addition to the
possibility of injunctive relief and punitive damages..

If Fox's understanding of the facts as reflected in this letter is in any way in error, or if there is anything
you wish to discuss, I urge you to contact me immediately.

This letter is without waiver of or prejudice to any of Fox's rights, remedies, objections, positions or
defenses, all of which are expressly reserved.

Sincerely,

*Michael D Ross*

Michael D. Ross

MDR:lbs

cc:     Stephen D. Barnes, Esq. (Barnes, Morris et al. via fax:  (310) 319-3999)
        Brad Slater (WMA via fax:  (310) 248-5776)
        Constance Schwartz (The Firm via fax:  (310) 680-8130)


LGL\603921 v4 MDR  10-12-06
"COACH SNOOP"/TV One

**EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATURAL RESOURCES MEDIA
& TECHNOLOGY GROUP, LLC,

                      Plaintiff,

        -against-

SNOOP YOUTH FOOTBALL LEAGUE
FOUNDATION, THE FIRM, INC., d/b/a "THE
FIRM," and CONSTANCE SHWARTZ,

                      Defendants.

**NOTICE OF CONSENT TO REMOVAL**

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORDS:

PLEASE TAKE NOTICE that Defendant Snoop Youth Football League Foundation

("SYFL") hereby consents to the Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446,

filed by Defendants The Firm, Inc., d/b/a/ "The Firm" ("The Firm") and Constance Schwartz

("Schwartz") (collectively, "The Removing Defendants").

Dated: New York, New York
      August 29, 2007

STEPTOE & JOHNSON LLP

By: _____
     Michael C. Miller (MM 4632)
     Evan Glassman (EG 9493)
     Christopher J. Marino (CM 3219)
     750 West 7th Avenue, Suite 1900
     New York, NY 10019
     (212) 506-3900

     *Attorneys for Defendant*
     *Snoop Youth Football League*
     *Foundation*

*Of Counsel:*
Michael R. Heimbold
Dylan Ruga
STEPTOE & JOHNSON LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
(310) 734-3200