UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
NATURAL RESOURCES MEDIA :
& TECHNOLOGY GROUP, LLC, :
:
:
Plaintiff, :
-against- :
: Case No. 07 CV 7701 (SAS) (AJP)
:
SNOOP YOUTH FOOTBALL LEAGUE :
FOUNDATION, THE FIRM, INC., d/b/a "THE :
FIRM," and CONSTANCE SHWARTZ, :
:
Defendants. :
:
------------------------------------------------------------X


PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT THE FIRM'S MOTION TO DISMISS



Bradley C. Rosen, Esq. (BR 9561)
159 Seneca Parkway
Rochester, New York 14613
(585) 458-7620

*Of Counsel:*

Anastasios Sarikas  (AS 2631)
23-09 31st Street
Astoria, NY 11105
(718) 545-8866


*Attorneys for Plaintiff
Natural Resources Media &
Technology Group, LLC*

TABLE OF CONTENTS

TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 2 |
| STANDARD OF REVIEW | 5 |
| ARGUMENTS | 7 |
| POINT I: THE COMPLAINT ADEQUATELY ALLEGED THREE CLAIMS FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS | 7 |
| POINT II: PLAINTIFF HAS ADEQUATELY PLED CAUSES OF ACTION FOR DEFAMATION | 11 |
| CONCLUSION | 14 |

TABLE OF AUTHORITIES

Page

Cases

*Allah v. Goord*, 405 F.Supp.2d 265, 272 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . .   6

*Anderson v. Livonia, Avon & Lakeville Railroad Corp.*
300 A.D.2d 1134, 752 N.Y.S.2d 763 (4th Dep't 2002) . . . . . . . . . . . . . . . . . . . . .   10

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,
__ U.S. __, 167 L.Ed.2d 929, (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Blythe v. Deutsche Bank AG*, 399 F.Supp.2d 274 (S.D.N.Y.2005) . . . . . . . . . . . . . . .   2

*Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163 (2[d] Cir. 2000) . . . . . . . .   12

*Enercomp, Inc. v. McCorhill Pub., Inc.* 873 F.2d 536 (2[d] Cir. 1989) . . . . . . . .   7

*Geisler v. Petrocelli,* 616 F.2d 636 (2[d] Cir.1980) . . . . . . . . . . . . . . . . . . . . . . .   12

*Global Network Communications, Inc. v.
City of New York*, 458 F.3d 150 (2[d] Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . .   6

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
50 N.Y.2d 183, 406 N.E.2d 445, 428 N.Y.S.2d 628 (1980) . . . . . . . . . . . . . . .   11

*Iqbal v. Hasty*, 490 F.3d 143 (2[d] Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Ives v. Guilford Mills, Inc.*, 3 F.Supp.2d 191 (N.D.N.Y. 1998) . . . . . . . . . . . . . .   12

*Kelly v. Schmidberger*, 806 F.2d 44 (2[d] Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . .   12

*Koppel v. 4987 Corp.*, 167 F.3d 125 (2[d] Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . .   6

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2[d] Cir. 1991) . . . . . . . . . . . . . . . . . .   6

*Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 612 N.E.2d 289, 595 N.Y.S.2d 931 (1993)

*Manning v. Utilities Mut. Ins. Co., Inc.*, 254 F.3d 387 (2[d] Cir. 2001) . . . . . . . .   1

*Museum Boutique Intercontinental, Ltd. v.
Picasso*, 886 F.Supp. 1155 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Paulemon v. Tobin*, 30 F.3d 307 (2[d] Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . .   2

*Phelps v. Kapnolas,* 308 F.3d 180 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Rice v. Manley*, 66 N.Y. 82, 1876 WL 12203 (1876)   . . . . . . . . . . . . . . . . . . . . .   10-11

*S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*,
108 A.D.2d 351, 489 N.Y.S.2d 478, (1st Dep't 1985)   . . . . . . . . . . . . . . . . . . . . .   7-8

*Sabatowski v. Fisher Price Toys*, 763 F.Supp. 705 (W.D.N.Y. 1991)   . . . . . . . .   1

*Slayton v. American Exp. Co.*, 460 F.3d 215 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . .   1

*Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57 (2d Cir., 1993)   . . . . . . . . . . . . . .   13

*Yammine v. DeVita*, 43 A.D.3d 520, 840 N.Y.S.2d 652, (3rd Dep't, 2007)   . . . . . . . .   13

*Zhong v. August August Corp.*, 498 F.Supp.2d 625 (S.D.N.Y. 2007)   . . . . . . . . . . .   6

Statutes

Federal Rules of Civil Procedure Rule 8    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Federal Rules of Civil Procedure Rule 12   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

Federal Rules of Civil Procedure Rule 15   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 9

17 U.S.C.A. § 506   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

18 U.S.C.A. § 2319   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Miscellaneous

Restatement (Second) Torts § 558 (1977)   . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11-12

Restatement (Second) Torts, § 766 (1977)   . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

PRELIMINARY STATEMENT

The present action is a claim for breach of contract interposed by plaintiff Natural Resources Media & Technology Group, LLC ("Natural Resources") against defendant Snoop Youth Football League Foundation ("SYFL.") Natural Resources also interposed claims for tortious interference with contractual relations and libel against defendants Constance Schwartz ("Schwartz") and The Firm, Inc. d/b/a "The Firm" ("The Firm.")

Pursuant to a stipulation between the parties, defendant Constance Schwartz was dismissed from this action. (Affirmation of Bradley C. Rosen, affirmed February 4, 2008 ("Rosen Aff.") at Exh. C) This dismissal was without prejudice to renew the action in the District Court for the Central District of California. (*Id.*)

Defendant The Firm now moves herein to dismiss the complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) ("Rule 12(b)(6)"), on the grounds that Natural Resources has allegedly failed to state a claim against The Firm. A review of the four corners of the Amended Complaint, dated December 17, 2007 (the "Complaint") and the documents annexed thereto (Rosen Aff. at Exhibit A), viewed in the light most favorable to plaintiff, shows that the claims for tortious interference with contract and libel have been adequately pled. *See, Sabatowski v. Fisher Price Toys*, 763 F.Supp. 705, 714-715 (W.D.N.Y. 1991). As such, the motion should be denied. Alternatively, plaintiff should be afforded an opportunity to replead the claims should the Court find them to be technically deficient. Rule 15(a) (leave to replead "shall be freely given when justice so requires.") *See also, Manning v. Utilities Mut. Ins. Co., Inc.*, 254 F.3d 387, 402 ($2^d$ Cir. 2001); *Slayton v. American Exp. Co.*, 460 F.3d 215, 230 ($2^d$ Cir. 2006).

STATEMENT OF FACTS

In determining a motion brought pursuant to Rule 12(b)(6), the Court is constrained to accept all statements set forth in the Complaint, inclusive of exhibits annexed thereto, as true. *Blythe v. Deutsche Bank AG*, 399 F.Supp.2d 274, 278 (S.D.N.Y.2005). The Court must also construe all reasonable inferences in the light most favorable to the plaintiff. *Paulemon v. Tobin*, 30 F.3d 307, 308 ($2^d$ Cir. 1994). The following facts are set forth in the Complaint.

The SYFL is the operator of a youth football program. (Rosen Aff. at Exh A at ¶ 2) On or about June 26, 2006, plaintiff entered into a contract with the SYFL for the filming and distribution of certain SYFL games. (Rosen Aff. at Exh. A at Exh. 1 thereof). Specifically, the Contract provided that plaintiff would have the right to video tape all SYFL games played in the 2006 season, the championship game, also known as the "2006 Snooperbowl," and a child and celebrity game referred to as "The Snoop Youth Football League Battle of the Stars" (all of which shall collectively be referred to as the "Programs" herein.) (Rosen Aff. at Exh. A at Exh. 1 thereof) The copyright in the Programs were to be owned jointly by the SYFL and plaintiff. (Rosen Aff. at Exh. A at Exh. 1 thereof) The Contract also granted plaintiff the right to distribute the Programs by any means, including, but not limited to, sales of DVDs, home video, broadcast and pay-per-view. (Rosen Aff. at Exh. A at Exh. 1 thereof)

Plaintiff was also granted certain future rights under the Contract. In the event that plaintiff obtained distribution for the Programs by December 31, 2006, then plaintiff would have the right to film and distribute the 2007 Snooperbowl and Battle of the Stars. (Rosen Aff. at Exh. A at Exh. 1 thereof) Distribution included sales of Home Video product and/or an agreement for the broadcasting of the Programs. (*Id.*) If plaintiff obtained a broadcasting

2

agreement with a major network (*i.e.* ABC, NBC, CBS or Fox), then plaintiff would have all the rights for the 2008 SYFL season, including the championship and all-star games. (*Id*.)

Relying upon the Contract with SYFL, plaintiff entered into a verbal agreement with Strange Fruit Film and TV ("Strange Fruit") whereby Strange Fruit was to be responsible for producing the Programs (*i.e.* filming, editing, etc.) (Rosen Aff at Exh. A at ¶ 17) Pursuant to this oral agreement, Strange Fruit began filming the SYFL's 2006 seasonal games. (*Id*.)

Plaintiff also entered into a verbal agreement with TV One, who is a cable broadcaster, (Rosen Aff at Exh. A at ¶ 17) to both finance the filming of the Programs and to broadcast them as well. Since plaintiff had obtained a contract for the broadcast of the Programs, plaintiff was, pursuant to the terms of the Contract, entitled to the rights in the 2007 Snooperbowl and Battle of the Stars. (Rosen Aff. at Exh. A at Exh 1 at ¶ 10 thereof)

Strange Fruit began filming the games of the SYFL's 2006 season in accordance with the verbal agreement with plaintiff. (Rosen Aff. at Exh. A at ¶ 18 thereof) However, the filming abruptly ceased because of the wrongful acts of Ms. Schwartz and The Firm.

The Firm is a company that provides various celebrities with personal management services. (Rosen Aff. at Exh. A at ¶ 4 thereof) Constance Schwartz is an employee of The Firm. (Rosen Aff. Exh. A at ¶ 7 thereof) The Firm and Schwartz provide personal management services for Cordozar Calvin Broadus, Jr. a/k/a 'Snoop Dogg" ("Snoop.") (Rosen Aff. at Exh. A at ¶ 5 thereof)

At some point prior to October 12, 2006, Constance Schwartz, either individually or in her capacity as an employee of The Firm, contacted Karen Wishart, the Executive Vice President and Chief Legal Officer for TV One. (Rosen Aff. at Exh. A at ¶ 21 thereof) It is not know at this pre-discovery stage the exact wording of the conversation between Ms. Schwartz and Ms.

3

Wishart. What is known is that Ms. Schwartz did tell Ms. Wishart that plaintiff did not have the right or authority to record, broadcast or otherwise use the Events. (*Id*.) Based upon this conversation, TV One breached its agreement with plaintiff by withdrawing TV One's financing of the recording and refusing to broadcast the Events. (Rosen Aff. at Exh. A at ¶ 22 thereof) Because of this breach, Strange Fruit also breached its agreement with plaintiff and ceased recording the Events. (*Id*.)

On or about October 12, 2006, Ms. Schwartz, either individually or in her capacity as an employee of The Firm, compounded the injury when she contacted Twentieth Century Fox, a unit of Twentieth Century Fox Film Corporation ("Fox") concerning plaintiff's recording of the Programs. (Rosen Aff. at Exh. A at ¶ 23 thereof) Plaintiff believes and contends that Ms. Schwartz erroneously informed Fox that plaintiff had no rights in or to the SYFL and was thus filming the SYFL without any authorization. (*Id*.)

While plaintiff does not know all of the people at Fox that were contacted by Ms. Schwartz, it is clear that, at the very least, she spoke to Michael D. Ross, Fox's Senior Vice President of Legal Affairs. (Rosen Aff. at Exh. A at Exh 2 thereof) It is also clear that Ms. Schwartz and The Firm either knew or should have known of the Contract and of the rights in the Programs that were held by plaintiff when she made her statements to Mr. Ross and Fox. (Rosen Aff. at Exh. A at ¶ 36)

Apparently, Fox had been granted rights that overlapped with the rights that had been granted to plaintiff. (Rosen Aff. at Exh. A at Exh. 2 thereof) This conflict of overlapping rights to the filming and broadcasting of SYFL programs became apparent to plaintiff when it received a letter from Fox dated October 13, 2006 (the "Fox Letter"), in which Fox claimed that "Snoop

4

granted Fox exclusive rights to portray Snoop in any motion picture or television project or other production based on Snoop's involvement with his son's football teams and leagues." (*Id.*)

It is not known at this pre-discovery stage what were the precise rights granted to Fox by Snoop. However, the SYFL has admitted that Fox received no grant of rights from the SYFL. (Rosen Aff. at Exh. B. at ¶ 20)  It would thus appear that Fox had no right to film and/or distribute the Programs - rights that were held exclusively by plaintiff. (*Id.*)

In light of the Fox Letter and the demands contained therein, as well as the statements made by Ms. Schwartz to Ms. Wishart, Strange Fruit ceased its filming of the Programs and TV One withdrew from its agreement to broadcast the Programs. Once Strange Fruit and TV One withdrew from their agreements with plaintiff, it became impossible for plaintiff to fulfill its obligations under the Contract. All of this occurred because Ms. Schwartz made statements to Ms. Wishart, TV One and Fox that she knew, or, as Snoop's manager, should have known, were false. The damage that Ms. Schwartz inflicted by making knowingly false statements is at the crux of this action.

## STANDARD OF REVIEW

Defendant The Firm has moved pursuant to Rule 12(b)(6) to dismiss the Complaint as it pertains to The Firm. It asserts that the Complaint fails to state a cause of action as to The Firm. As will be discussed below, the Complaint sufficiently pleads claims against The Firm for tortious interference with contract and libel and requires denial of the motion. Alternatively, should the Court find that the pleadings are defective, the Court is empowered to permit plaintiff to replead either or both causes of action. Rule 15(a).

The Second Circuit has clearly articulated the function of a motion made pursuant to Rule 12(b)(6), holding that:

5

> The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it.

*Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original).

As this Court has noted:

> At the motion to dismiss stage, the issue "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test."

*Allah v. Goord*, 405 F.Supp.2d 265, 272 (S.D.N.Y. 2005) (*quoting Phelps v. Kapnolas,* 308 F.3d 180, 184-85 (2d Cir. 2002).

When the issue raised by a Rule 12(b)(6) motion is the sufficiency of the pleadings, the Court may only look to the four corners of the complaint and any exhibits annexed thereto. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). The Court is directed to assume that all factual statements contained in the pleading are true. *Koppel v. 4987 Corp.*, 167 F.3d 125, 128 (2d Cir. 1999). The pleading is to be read liberally, and all inferences are to be drawn in favor of the non-moving party. *Zhong v. August August Corp.*, 498 F.Supp.2d 625, 628 (S.D.N.Y. 2007). The complaint will pass muster if the factual allegations merely show that that the right to relief is anything other than speculative. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965, __ U.S. __, 167 L.Ed.2d 929, ___ (2007). As the Second Circuit recently held in interpreting *Bell Atlantic Corp.*, the pleadings need only contain "some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 148 (2d Cir. 2007) (emphasis in original). When reviewed in light of this framework, it is clear that the claims for tortious interference with contract and libel have been

6

adequately set forth in the complaint.

ARGUMENTS

POINT I

THE COMPLAINT ADEQUATELY ALLEGED THREE CLAIMS FOR
TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

Defendants assert that all three causes of action for tortious interference with contract[1] are defective because the word "breached" was not used in connection with the allocution. They also claim that the relevant terms of the contract that were breached have not been set forth in the complaint. They further contend that the Third and Fourth causes of action are defective because they claim that their actions were not the direct cause of the breach by TV One and Strange Fruit. These assertions fail both as a matter of law and of fact.

This Court has held that:

> In order to state a claim for tortious interference with contract under New York law, a plaintiff must allege four elements: i) the existence of a valid contract between the plaintiff and a third party; ii) defendant's knowledge of the contract; iii) defendant's intentional inducement of the third party to breach the contract or otherwise render performance impossible; and iv) damages to plaintiff.

*Museum Boutique Intercontinental, Ltd. v. Picasso*, 886 F.Supp. 1155, 1161 (S.D.N.Y. 1995). As this Court noted, numerous New York courts have held that a breach of the underlying agreement is not necessary in order to sustain a claim for tortious interference with contractual relations. *See*, *Enercomp, Inc. v. McCorhill Pub., Inc.* 873 F.2d 536, 541 (2$^d$ Cir. 1989)(complainant need show only "defendants' improper intentional interference with [contract's] performance"); *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 612 N.E.2d 289, 595 N.Y.S.2d 931 (1993) (need show only that conduct "otherwise render[ed] performance impossible"); *S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 108 A.D.2d 351, 354,

7

489 N.Y.S.2d 478, 480 (1st Dep't 1985) (claim consists of "intentional interference with the performance of that contract by the third party without justification.")

As the Restatement of Torts states, tortious interference with contractual relations occurs when:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) Torts, § 766 (1977). Actual breach of the agreement is not an element in the Restatement, only interference with the contract needs to be shown.

Clearly the complaint establishes that The Firm interfered with both the contract between plaintiff and TV One as well as the contract between plaintiff and Strange Fruit. Prior to the interference, TV One was financing the filming of the Events and had agreed to broadcast the Events. Strange Fruit had agreed to film the Events and had actually begun the filming the Events. Then Ms. Schwartz told Ms. Wishart of TV One and Mr. Ross of Fox that plaintiff did not have the right to film, broadcast or otherwise use the Events, statements that Ms. Schwartz knew or should have reasonably known to be false. And because of these false statements, TV One ceased financing the filming and Strange Fruit ceased filming the events, which made the broadcast of the Events by TV One impossible. This is clearly an interference with contract for which redress should be permitted.

Alternatively, should the Court find that it is necessary to allege that a breach of the contract occurred, a liberal reading of the Complaint shows that such an allocation was made. The Complaint states that plaintiff had entered into a contract with TV One for the financing of

---

[1] Being the Second, Third and Fourth Causes of Action.

the filming of the Events as well as their eventual broadcast.  Strange Fruit had contracted with plaintiff to do the filming, and had actually begun filming the Events.  Following the interference by Ms. Schwartz and the Firm, the Complaint states that both Strange Fruit and TV One "withdrew" form their respective agreements "ceased to render services" and "served written notice of the cancellation of their respective contracts". (Rosen Aff. at Exh. A at ¶ 26)  The conduct detailed is tantamount to a breach, and the language is synonymous thereto.

Finally, if it is found that the term "breached" must appear in the complaint in regards to the conduct of Strange Fruit and TV One, then it is respectfully requested that leave be granted to amend the Complaint to alter the term "withdrew from" to "breached."  This would be in keeping with the spirit of Rule 15(a).

The Firm also claims that the relevant portions of the contracts that were breach have not been set forth with particularity.  This claim is specious.  The relevant terms of the contract between TV One and plaintiff called for TV One to finance the filming of the Events and to broadcast them.  (Rosen Aff. at Exh. A at ¶ 17) These were the terms that were breached. Likewise, the relevant terms of the agreement between Strange Fruit and plaintiff were that Strange Fruit was to film the Event. (*Id.*) This is the term that they breached when they ceased filming.  Clearly, the relevant terms of the contracts that were breached have been articulated in the Complaint.

Defendant The Firm also claims that the Third and Fourth Causes of Action fail to state a claim because there is no causal link between the statement complained of and the breach of contract.  They claim that since no statement was made directly to Strange Fruit, and that they learned of Ms. Schwartz's false statements through either the Fox Letter or Ms. Wishart, The

9

Firm did not cause the breach. The Firm's argument is akin to saying: "I didn't break your head. The rock that I threw did it".

What The Firm would have this Court overlook is the fact that the true act of interference occurred when Ms. Schwartz made a knowingly false statement to Ms. Wishart and to Fox. When Ms. Schwartz, who, through The Firm, is Snoop's manager, told TV One and Fox that plaintiff had no rights in the Programs, she knew or should have known that the statement was false. That this false information was then supplied to Strange Fruit, who then breached their contract with plaintiff, is simply the natural consequence of the wrongful act.

A case that is similar to the one at hand is *Anderson v. Livonia, Avon & Lakeville Railroad Corp*. 300 A.D.2d 1134, 752 N.Y.S.2d 763 (4th Dep't 2002). *Anderson* involved a shareholder's derivative action brought as a result of a proposed reverse stock split. *Id*. at 300 A.D.2d 1134, 752 N.Y.S.2d 764. The plaintiff was a shareholder who was attempting to purchase additional shares directly from the other shareholders. *Id*. The Board of Directors managed to have a newspaper article and editorial piece run in a local paper that falsely stated that plaintiff was attempting a take-over of the railroad, which would lead its demise. *Id*. Even though the Board of Directors did not author either the article or opinion piece, the Fourth Department held that the act of knowingly distributing false information could form the basis of a claim for tortious interference with contract. *Id*. at 300 A.D.2d 1135, 752 N.Y.S.2d 764

The rational behind *Anderson* is well established and pertinent to the case at hand: one may not do indirectly that which one may not do directly. As the New York Court of Appeals said almost 130 years ago:

> The mere forms adopted for the perpetration of frauds are of little importance; it matters not whether the false representations be made to the party injured or to a third party, whose conduct is thus influenced to produce the injury, or whether it be direct or indirect in its consequences. Schemes of fraud may be

10

so cunningly devised as to elude the eye of justice, but they must not escape condemnation and reparation when discovered.

*Rice v. Manley*, 66 N.Y. 82, 87, 1876 WL 12203, *4 (1876) (cited with approval at *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 194, 406 N.E.2d 445, 451, 428 N.Y.S.2d 628, 634 (1980) (" . . . we have upheld complaints and recoveries in actions seeking damages for interference when the alleged means employed by the one interfering were wrongful as consisting of fraudulent representations . . . .")

Here, The Firm knew, or should have known, that plaintiff had rights in and to the Programs. When they told Ms. Wishart and then Fox that plaintiff had no rights, they tortiously interfered with plaintiff's contractual rights. They should not, therefore, be surprised now that they are being held to account for their actions.

Plaintiff has established that all elements of a claim for tortious interference with contractual relations have been sufficiently set forth in the Complaint. As such, defendant's motion should be denied.

POINT II

PLAINTIFF HAS ADEQUATELY PLED
CAUSES OF ACTION FOR DEFAMATION

The Firm has moved to dismiss the Fifth and Sixth Causes of Action, both for defamation. They claim that the words complained of have not been set forth with sufficient specificity. They further claim that there is a need to plead special damages. Nether of these arguments are meritorious.

To prevail on a cause of action for defamation, a claimant must establish that: a) a statement was made; b) of and concerning the complainant; c) which was published to a third party; d) which was a false statement of fact; e) which was not privileged; f) which was published with a degree of fault no less than negligence; and g) which caused damages.

11

Restatement (Second) Torts § 558 (1977); *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 176 (2$^d$ Cir. 2000).

> The Second Circuit has held that, under federal law:
>
> [T]he mode of pleading defamation is governed by Rule 8, Fed.R.Civ.P., which requires only that plaintiff's charges be set forth in a short and concise statement, detailed only to the extent necessary to enable defendant to respond and to raise the defense of res judicata if appropriate. The pleading of additional evidence is not only unnecessary, but in contravention of proper pleading procedure. Such additional information is now available through the liberalized discovery provisions.

*Geisler v. Petrocelli,* 616 F.2d 636, 640 (2$^d$ Cir.1980).

> It is also well settled that, when the cause of action is for slander based upon the spoken word):
>
> [T]he complaint need not contain the defamatory statements *in haec verba* ("in these words"). Instead, the pleading is sufficient if there is an adequate identification of the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated.

*Ives v. Guilford Mills, Inc.*, 3 F.Supp.2d 191, 199 (N.D.N.Y. 1998) (citations and internal quotations omitted). As the Second Circuit has held "[t]he central concern is that the complaint afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2$^d$ Cir. 1986) (citations and internal quotations omitted).

The complaint clearly meets this standard. The words complained of are that Ms. Schwartz said, on at least two occasions, that "plaintiff recording and/or otherwise utilizing the Events without authorization." (Rosen Aff. at exh. A at ¶¶ 55, 64) This gives sufficient notice of the statements complained of. To hold otherwise would mean that the only claim for slander that could ever be advanced would be one where the statement was made to the plaintiff so he can quote the statement verbatim, which is clearly not the law.

12

The Firms contention that the complained of statements are not libelous per se is also without merit.

> [W]here, as here, the statements charge another with a serious crime or have the ability to injure another in his or her trade, business or profession, the statements become slander per se and "the law presumes that damages will result, ... they need not be alleged or proven."

*Yammine v. DeVita*, 43 A.D.3d 520, 521, 840 N.Y.S.2d 652, 655 (3rd Dep't, 2007) (*quoting Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 605 N.E.2d 344, 347, 590 N.Y.S.2d 857, 860 (1992). *See, Weldy v. Piedmont Airlines, Inc*., 985 F.2d 57, 61-62 (2d Cir., 1993).

Here, the statements charge plaintiff with a serious crime. Ms. Schwartz stated that plaintiff "was recording and/or otherwise utilizing the Events without authorization." (Rosen Aff. at Exh. A. at ¶¶ 55, 64) This is a claim that plaintiff was knowingly violating the SYFL's copyrights without authorization. Knowing violation of a copyright is a crime punishable by up to five years imprisonment. 17 U.S.C.A. § 506; 18 U.S.C.A. § 2319. As such, Ms. Schwartz statement is a claim that plaintiff is committing a serious crime and is thus libelous per se. Alternatively, Ms. Schwartz's allegation is, at the very least, a claim that has, and did, injury plaintiff in his business or profession, also making it libelous per se.

The complaint gives sufficient specificity to the words complained of. Further, those words are libelous per se, negating the need to plead special damages. As such, The Firm's motion to dismiss the Fifth and Sixth Causes of Action for defamation should be denied.

## CONCLUSION

For all of the reasons set forth above, as well as those set forth in the Affirmation of Bradley C. Rosen, it is respectfully requested that the motion of The Firm to dismiss the Complaint be denied in its entirety. Alternatively, should the Court deem it necessary, plaintiff should be afforded an opportunity to replead in a manner consistent with any determination of the Court.

Dated: New York, NY
       February 4, 2007

_____
Bradley C. Rosen, Esq. (9561)
159 Seneca Parkway
Rochester, New York 14613
(585) 458-7620

*Of Counsel:*

Anastasios Sarikas
23-09 31st Street
Astoria, NY 11105
(718) 545-8866

*Attorneys for Plaintiff*
*Natural Resources Media &*
*Technology Group, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

NATURAL RESOURCES MEDIA
& TECHNOLOGY GROUP, LLC,

                Plaintiff,

-against-

SNOOP YOUTH FOOTBALL LEAGUE
FOUNDATION, THE FIRM, INC., d/b/a "THE
FIRM," and CONSTANCE SHWARTZ,

                Defendants.

Case No. 07 CV 7701 (SAS) (AJP)

**AFFIRMATION OF SERVICE**

STATE OF NEW YORK)
COUNTY OF MONROE )    ss.:

BRADLEY C. ROSEN, being an attorney duly licensed to practice law before the courts of the State of New York, does affirm, under penalty of perjury, as follows:

I am not a party to the action, am over 18 years of age and reside at 159 Seneca Parkway, Rochester, New York.

On February 4, 2008, I served a true copy of the annexed Plaintiff's Memorandum of Law in Opposition to The Firm's Motion to Dismiss by depositing the papers, enclosed in a properly addressed wrapper into the custody of an overnight delivery service for overnight delivery, prior to the latest time designated by the overnight delivery service for overnight delivery, addressed to the following addresses:

| | |
|---|---|
| Hayes F. Michel, Esq. | Dylan Ruga, Esq. |
| Walsworth Franklin | Steptoe & Johnson LLP |
| Bevins & McCall | 2121 Avenue of the Stars |
| 633 W. 5th Street, 28th Floor | Suite 2800 |
| Los Angeles, CA 90071 | Los Angeles, CA 90067 |
| (213) 223-2052 | (310) 734-3200 |
| *Attorneys for Defendant* | *Attorneys for Defendant* |
| *Snoop Youth Football* | *The Firm, Inc., d/b/a "The Firm,"* |
| *League Foundation* | |

Dated: February 4, 2008
       Rochester, NY

                                                          BRADLEY C. ROSEN